**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TONIANN TRAVAGLIO,

     Plaintiff,

v.                               Case No.: 8:25-cv-01955-KKM-AEP


PITNEY BOWES INC,

     Defendant.

_____/

## AMENDED JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AGREEMENT

Plaintiff, ToniAnn Travaglio ("Plaintiff"), and Defendant, Pitney Bowes Inc. ("Defendant"), have reached a settlement of Plaintiff's claims against Defendant relating to alleged violations of the Fair Labor Standards Act ("FLSA"). Defendant does not believe Plaintiff has any meritorious claim under the FLSA. However, to avoid the time, disruption, cost and uncertainty of litigation, Defendant agreed to a compromised settlement. Thus, the entire amount Defendant has agreed to pay Plaintiff is consideration for Plaintiff dismissing the lawsuit and the additional terms included in the settlement. Regardless, Defendant has now agreed to pay Plaintiff specific additional monetary consideration for the three provisions the Court identified in the original settlement agreement. Accordingly, the Parties hereby jointly move for approval of the FLSA Settlement Agreement (the "Agreement"),

which is submitted with this Joint Motion for Approval of FLSA Settlement Agreement[1] (the "Joint Motion") as **Exhibit 1**.

## INTRODUCTION

The settlement memorialized in the Parties' Agreement satisfies the criteria for approval of an FLSA settlement because it was reached after significant information exchange and contested litigation; was the result of arm's length settlement negotiations conducted by counsel well versed in the applicable law; and was reached with the assistance of an experienced mediator. Accordingly, the Parties request that the Court enter an Order which (1) approves as fair, adequate, and reasonable the gross settlement and the scope of the release set forth in the Agreement; (2) approves the award of attorneys' fees to compensate Plaintiff's counsel for their attorneys' fees and out-of-pocket expenses; (3) dismisses the lawsuit with prejudice; (4) closes the case and denies all pending motions as moot; and (5) grants any further relief that this Court deems just and proper.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2025, Plaintiff filed her Complaint in the United States District Court for the Middle District of Florida, Tampa Division, alleging violations of the overtime provisions of the FLSA. Plaintiff was a Payroll Tax and General Ledger

---

[1] The Parties will file the fully executed settlement agreement upon receipt from Defendant.

Lead for Defendant and claimed that she was misclassified as exempt from overtime which resulted in Plaintiff allegedly not being compensated for overtime for all hours worked over forty (40) in a workweek.

The Parties began informal settlement discussions, including the exchange of numerous documents pertaining to Plaintiff's employment, pay, and timekeeping procedures. Additionally, Defendant provided Plaintiff with an arbitration agreement that she signed requiring Plaintiff to mediate her claims before seeking relief via binding arbitration. The merits of Plaintiff's FLSA claims are in dispute as Defendant maintains that Plaintiff was properly classified as exempt from overtime under the administrative exemption provided for in 29 C.F.R. § 541.203.

During a full day mediation on October 27, 2025, with an agreed-upon mediator, Robert Bonnano, Esq., the Parties considered their own risk in further litigating this matter and decided to reach an agreement in compromise of Plaintiff's FLSA wage claims.

The Parties filed a Joint Motion for Approval requesting that the Court approve the settlement that the Parties reached at mediation. On December 5, 2025, the Court denied the Parties' Joint Motion citing three considerations that the Court found prevented approval of the original settlement agreement. The Parties negotiated a new FLSA Settlement Agreement (***Exhibit 1***) and submit this Amended Joint Motion for Approval for the Court's review.

3

## TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to settle Plaintiff's claims and provide for a dismissal of Plaintiff's claims with prejudice, the detailed terms of which are set forth in **Exhibit 1**. The Parties agree that the total settlement amount of $12,900.00 adequately compensates Plaintiff for her individual FLSA claims. That amount will be divided into two payments – $12,500.00 for Plaintiff's contested claims for unpaid wages, for which an IRS Form W-2 will issue (having all usual taxes and withholdings removed) and $400.00 for Plaintiff's contested claims for liquidated damages, for which an IRS Form 1099 will issue.

Plaintiff's counsel will receive $11,500.00 in attorneys' fees and costs for the work that Plaintiff's counsel did to resolve this case on behalf of Plaintiff. This amount was negotiated separately from the amount to settle Plaintiff's claims and without regard to the amount paid to Plaintiff. The attorneys' fees agreed upon by the Parties represents a reasonable amount for the work done by Plaintiff's counsel.

Further, in consideration for Plaintiff releasing all wage claims against Defendant and indemnifying Defendant against any future interest, taxes, or penalties assessed against it based on the amounts paid pursuant to the FLSA Settlement Agreement, Plaintiff will receive an additional $390.00 from Defendant.

Given the significant risk and expense of continued litigation, and the clear fairness of the terms of settlement, the Parties believe that the Agreement represents

a fair, adequate, and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, and questions of whether Plaintiff's claims would survive summary judgment or whether Plaintiff would obtain a favorable judgment following a trial.

## MEMORANDUM OF LAW

**I.      The Parties Agreed Upon Settlement Should be Approved.**

Over the life of this dispute, the Parties conducted informal discovery, investigated the supporting facts, and studied the legal principles applicable to the claims and defenses asserted. Based upon the Parties' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including Plaintiff's counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon Plaintiff pursuant to the Agreement, the Parties have concluded that this settlement is a fair, reasonable, and adequate compromise of a *bona fide* dispute concerning the legality of Defendant's classification of Plaintiff as an exempt employee, and is in the best interests of the Parties. The Parties now seek approval of their Agreement.

**A.      Applicable Case Law Supports Approval.**

The FLSA provides that "any employer who violates the provision of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may

be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, FLSA claims can be settled or compromised by employees if: (1) the Department of Labor supervises the compromise pursuant to 29 U.S.C. § 216(c); or (2) a district court approves the compromise pursuant to 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982). Before approving an FLSA settlement, a court must scrutinize the settlement to determine if it constitutes a fair and reasonable resolution of a bona fide dispute. *Id*. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve it. *Id*.

The Court may also consider the following factors: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; the range of possible recovery; and the opinions of class counsel. *Trentman v. RWL Communs., Inc.*, 2015 WL 5082725, at *2 (M.D. Fla. Aug. 27, 2015). When considering these factors, the court should keep in mind the "strong presumption" in favor of finding a settlement fair. *Hamilton v. Frito-Lay, Inc.*, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007).

**B.    A Bona Fide Dispute Exists**.

In the instant matter, the Parties stipulate that the issue of Plaintiff's recovery was negotiated independently, at arm's length and resolved to the Plaintiff's satisfaction. The Plaintiff could have chosen to continue in litigation but elected to

compromise the claims and resolve this bona fide dispute. In the instant case, the Defendant fiercely contested liability and the hours claimed by Plaintiff; meanwhile Plaintiff strongly disagrees with Defendant's exemption defense and arguments challenging the hours claimed by Plaintiff, given the lack of any time keeping records. Plaintiff asserted that she was owed overtime hours based on her allegations that the responsibility conferred upon her in her role did not meet the applicable duties test to warrant an exempt designation under the administrative exemption. Moreover, Plaintiff did not supervise and direct the work of 2 or more full-time employees. Defendant argued that Plaintiff, who worked under the title of Payroll Tax Lead, had a primary duty which was the performance of office or non-manual work directly related to the general business operations of Defendant and that her primary duties afforded her the required discretion and independent judgment to satisfy the requirements of the administrative exemption.[2]  Further, the Parties disputed whether Plaintiff worked a sufficient number of hours on a weekly basis over the term of her employment within the 3 year SOL for overtime liability to arise regardless of whether Plaintiff should be classified as exempt or non-exempt.

Consequently, the current settlement before the Court is the result of a bona fide and hotly contested dispute of factual and legal issues.

**C.     The Settlement is Fair and Reasonable.**

---

[2] Neither party contested that Plaintiff satisfied the salary-basis test.

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts of this matter. *Austin v. Pennsylvania Dept. of Corrs.*, 876 F.Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the [Claimant]."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). Further, this settlement was reached with the assistance of a mediator, who heard both Parties' arguments and assisted the Parties in reaching the resolution presented to the Court.

Additionally, the use of a mediator further demonstrates that no collusion occurred. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in precertification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") cited by *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 1:00- CV-2838-WBH, 2008 U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008).

There can be no question that this Agreement represents fair value for Plaintiff. As described in relation to this bona fide dispute, the Parties faced a

significant risk through this matter surrounding the facts of this case alone. At this stage, informal discovery has taken place along with detailed discussions of the facts and the law amongst counsel. This exchange of information and analysis allowed the Parties to determine Plaintiff's purported loss as a result of the alleged violations along with the identification of the risks for Plaintiff in continuing to pursue her claims. Plaintiff understands that the value of her claim is based almost entirely on a legal determination about the application of the exemption and that in weeks where she did not work more than 40 hours, there would be no recovery regardless of the outcome of the exemption issue. Thus, the amount at issue, even in the light most favorable to Plaintiff, is covered significantly by the amount agreed upon by the Parties.

Additional discovery in this regard would not likely have changed the outcome of the Agreement as it relates to the amount obtained. The state of the proceedings, therefore, supports final approval of the Agreement. Should the Parties' Agreement not be approved, expensive and time-consuming formal litigation will occur. The Parties' Agreement would therefore avoid potentially costly litigation and inconvenience that would occur over many months. Moreover, the obstacles concerning the merits of Plaintiff's case are real and, while Plaintiff maintains the veracity of her allegations, she understands that the Agreement benefits her with the surety of recovery.

Here, the settlement was achieved through day-long mediation on October 27, 2025, with Robert Bonanno, Esq., a former Circuit Court Judge. Thus, during this process, the Parties exchanged offers and counter offers and negotiated at arms length and came to a reasonable compromise over the wage claims of Plaintiff. This payment of $12,500 in unpaid wages is nearly 81.1% the estimated sum in wages Plaintiff contended was owed to her, but without all the available records estimated her wages might be. Defendant, however again disputes that Plaintiff is owed any overtime wages, and far less because it strongly disputes the hours she was claiming. Nonetheless, the Parties negotiated a compromise. The Defendant strongly presented subjective and objective arguments and information in support of its good faith defense of classifying Plaintiff as administratively exempt under the FLSA which might sway a court to reject approving of an award of liquidated damages. Thus, Plaintiff obtained some smaller amount, $400 in consideration for resolving the liquidated damages. Regardless, Plaintiff is satisfied that this is a reasonable compromise and in her best interest to agree to, as opposed to risking a court or jury awarding less in damages, or otherwise ruling her to be exempt and awarding 0 in wages. Moreover, if Plaintiff did not obtain a higher sum or prevail on the exemption defense, she risked being required to pay Defendant's costs of litigation and absorbing her own which she factored in, along with the time which she would have to dedicate to litigation and time value of money now.

As it pertains to legal fees, a court reviewing an FLSA settlement must review "the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 2009 WL 73164, *2 (11th Cir. Jan. 13, 2009). In the wake of *Silva*, persuasive authority has deemed scrutiny of the reasonableness of Plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where "the Plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the Plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the Plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement where the FLSA claims were compromised, there was a reasonable basis for such compromise, and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

As explained in *Bonetti,* "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the

11

settlement is for the parties to reach agreement as to the Plaintiff's recovery before the fees of the Plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the Plaintiff's settlement." 715 F. Supp. 2d at 1228. In *Bonetti*, Judge Presnell concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.*

Plaintiff's counsel believes that the Agreement's provision concerning the sum to be paid by Defendant's to settle Plaintiff's attorneys' fees claim is fair and reasonable. Defendant does not challenge the lodestar of Plaintiff's counsel's attorney's fees. The parties negotiated a compromise over the fees claimed by Plaintiff's counsel, and came to a settlement at arms length and during and through the mediation procedure. Thus, the amount Defendant is paying to settle Plaintiff's Fee claim under section 216(b), which was separately negotiated from the sum

Defendant agreed to pay to settle her wage claim, is fair, reasonable and does not taint the sum Plaintiff is receiving in wages.

The amount sought by Plaintiff's counsel is less than what counsel incurred in prosecuting this case and Plaintiff's claims, however, Plaintiff's counsel agreed to a reduced fee in order to provide relief for his client given the high risk in continuing forward with litigation based on the merits of the case. And this amount was negotiated separate from the Parties' efforts to agree upon an amount sufficient to resolve Plaintiff's claims. In fact, the Parties did not discuss the amount of attorneys' fees to be paid until they had already agreed upon the amount that Plaintiff would receive to resolve her claims. Thus, it is appropriate that the Court approve the attorneys' fees and cost amounts agreed upon by the Parties pursuant to the Agreement as it represents fair and reasonable compensation to Plaintiff's counsel for his services.

**D.     Additional Consideration for Terms**.

In its Order, the Court identified three issues with the Parties' terms in their original FLSA Settlement Agreement. The first was the inclusion of non-parties in the release of claims. ECF No. 15, p. 3. In the Agreement, Plaintiff agrees to release "Defendant, and its predecessors and successors in interest, assignees, parents, subsidiaries, professional employment organizations, divisions, and related companies and entities, and their past, present, and future shareholders, officers,

directors, supervisors, managers, employees, agents, attorneys, insurers, and representatives (hereafter collectively referred to as 'Releasees'), in their individual and official capacities, and their heirs and legal representatives." The Court found that this constituted releasing claims against non-parties and found that the Parties had provided no authority for doing so. Defendant believes that the scope of this release encompasses entities for which Plaintiff could claim were joint employers and/or seek relief from in some capacity. In that circumstance, courts have permitted the release of claims against non-parties. *See Beard v. Steak N Shake Operations, Inc.*, 2017 U.S. Dist. LEXIS 223490, at *12 (M.D. Fla. Nov. 3, 2017) (finding that where other entities fall "within the definition of 'employer' in 29 U.S.C. § 216(b), [the release] would not be overbroad[.]"); *Langellier v. Brevard Extraditions Inc.*, 2021 U.S. Dist. LEXIS 63119, at *8-9 (M.D. Fla. March 30, 2021) (recommending approving release covering non-named individuals that could be considered joint employers).

The Court also took issue with the scope of claims being released covering more than just the wage claims at issue under the FLSA and including tax indemnification language for Plaintiff. While the Parties believe that Plaintiff received sufficient consideration for the terms contained in the FLSA Settlement Agreement and that the terms were sufficiently narrow to warrant approval, the Parties have agreed to submit the revised FLSA Settlement Agreement that includes

14

an additional $390.00 of consideration to account for: (1) the release of a select group of non-parties, (2) claims for wages that are beyond what arise under the FLSA or similar state-law provisions, and (3) the tax indemnification provision. The additional consideration for these provisions is sufficient and approval is appropriate. *See Weldon v. Backwoods Steakhouse, Inc.,* 2014 U.S. Dist. LEXIS 123286, at *1 (M.D. Fla. Sept. 4, 2014) (approving settlement containing general release and non-disparagement agreement where the Plaintiff received full compensation of FLSA claim and $100.00 in additional consideration for same); *Smith v. Aramark Corp.*, 2014 U.S. Dist. LEXIS 155744, at *4 (M.D. Fla. Nov. 4, 2014) (approving FLSA settlement agreement where Plaintiff received additional consideration for general release of claims); *Buntin v. Square Foot Management Co., LLC*, 2015 U.S. Dist. LEXIS 68287, at *3 (M.D. Fla. May 27, 2015) (same); *Vela v. Sunnygrove Landscape & Irrigation Maint.*, LLC, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382 (M.D. Fla. October 4, 2018) (report and recommendation adopted by 2018 WL 8576384(approving a general release with a neutral reference serving as consideration); *Bouchelle v. Jag Enterprises, LLC*, No. 3:19-cv-588-J-32MCR, 2019 WL 11478074 (M.D. Fla. November 22, 2019) (holding a general release is permissible in an FLSA settlement agreement where Plaintiff receives adequate consideration in addition to the entitled benefits under the FLSA and finding a neutral reference was adequate consideration).

**WHEREFORE**, the Parties respectfully request that the Court approve the Agreement and dismiss this action with prejudice.

Respectfully submitted this 22nd day of December 2025 by,

| | |
|---|---|
| _/s/ Mitchell L. Feldman, Esq._ | _/s/ Todd S. Aidman, Esq._ |
| Mitchell L. Feldman, Esq. | Todd S. Aidman, Esq. |
| Florida Bar No.: 0080349 | Florida Bar No. 173029 |
| **Feldman Legal Group** | **FordHarrison LLP** |
| 12610 Race Track Rd., #225 | 401 East Jackson Street, Suite 2500 |
| Tampa, FL 33626 | Tampa, FL 33602 |
| Telephone: (813) 639-9366 | Telephone: (813) 261-7857 |
| Fax: (954) 337-2771 | Fax: (813) 261-7899 |
| mfeldman@flandgatrialattorneys.com | taidman@fordharrison.com |
| ***Lead Attorney for Plaintiff*** | ***Attorney for Defendant*** |

16